[Civ. No. 4212. Second Appellate District, Division Two.—September 24, 1924.]

## ROBERT McINTOSH, Respondent, v. GEORGE BRIMMER et al., Appellants.

[1] NUISANCES — MAINTENANCE OF CHICKEN RANCH — DUST PRODUCED BY SCRATCHING OF CHICKENS — CARRYING OF DUST BY WINDS TO PLAINTIFF'S PROPERTY — DAMAGES — INJUNCTION — PLEADING. — A complaint which in effect shows that the defendants maintain a chicken ranch opposite plaintiff's property, that through the scattering of chicken feed on the dry natural ground in the chicken corrals, where the chickens are confined, and through the scratching of the chickens on the dry surface, great volumes of dust are produced which are daily carried to plaintiff's land by the prevailing winds, and that the dust settles on, and clings to, plaintiff's walnut trees, vines, and grapes, thereby damaging the same, states a cause of action for the abatement of the nuisance and for damages.

[2] ID.—USE OF ONE'S LAND—RELATION TO NEIGHBORS.—The ancient maxim, *sic utere tuo ut alienum non laedas,* is the foundation of the rule that no one may make an unreasonable use of his own premises to the material injury of his neighbor's property. While every person has exclusive dominion over his land and may subject it to such uses as will subserve his wishes and private interests, he is bound to have respect and regard for his neighbors' rights.

[3] ID.—CHARACTER OF USE—EVIDENCE.—Whether or not a use which in itself is lawful is a nuisance depends upon a number of circumstances: locality and surroundings, the number of people living there, the prior use, whether it is continual or occasional, and the nature and extent of the nuisance and of the injury caused thereby. No hard-and-fast rule controls the subject.

[4] ID.—NATURE OF INJURY—EVIDENCE.—Location, priority of occupation, and the fact that the injury is only occasional, though matters to be considered, are not conclusive but are to be considered in connection with all the circumstances of the particular case; and whether the use is unreasonable or not is an inference to be drawn from all the facts.

[5] ID. — INJURY TO PROPERTY AND INJURY PRODUCING PERSONAL DISCOMFORT—DISTINCTION.—There is a marked distinction between an action for nuisance in respect to an act producing a material injury to property, as where trees or fruit are injured by dust or noxious gases, and an action brought in respect to an act producing personal discomfort only, such, for example, as noises, disagreeable smells, et cetera. As to the latter, the person complaining of the annoyance must submit, in the interest of the public generally, to the discomfort usually incident to the circumstances of the place and the trades carried on around him; but the same rule does not apply where the injury is to property.

[6] ID.—PERSONAL DISCOMFORT.—The law of nuisance, where personal discomfort is the ground of complaint, is applied only to normal persons—to persons of ordinary sensibilities.

[7] ID. — UNREASONABLE USE OF LAND — EVIDENCE. — While the words "unreasonable use" do not appear in such complaint, the only inference which can be drawn from all of the alleged facts is that the use of defendants' land was, as to plaintiff, unlawful and unreasonable.

[8] ID. — UNREASONABLENESS OF USE — EVIDENCE. — It cannot be said that a person's use of his property is reasonable and lawful where that use directly and substantially causes damage to the property of another which could have been avoided with reasonable care and without unreasonable effort or expense.

2.   See 20 Cal. Jur. 267, 285, 293; 20 R. C. L. 381, 413.
3.   See 20 R. C. L. 440.
5.   See 20 Cal. Jur. 275.

[9] ID.—MATERIAL INJURY DUE TO DESTRUCTIVE VOLUMES OF DUST.—
What constitutes a reasonable use of one's property cannot be de-
fined by any certain, general rule, but this much seems indis-
putable: A reasonable use can never be construed to include those
uses which produce destructive volumes of dust, to the material
injury of the property of those who dwell in the neighborhood.

[10] ID. — DISTANCE BETWEEN NUISANCE AND INJURED PROPERTY —
PLEADING—EVIDENCE.—In an action to abate an existing nuisance
and for damages caused by great volumes of dust produced by
chickens on defendants' land and blown by the winds on to plain-
tiff's fruit and vines, in respect to the distance from defendants'
chicken ranch to plaintiff's land, the complaint was sufficient where
it was shown that the defendants' chicken ranch is so close to
plaintiff's land and that the two properties are so situated with
respect to each other that the dense clouds of dust which were
raised by the scratching of the chickens did settle upon and injure
plaintiff's trees, vines, and grapes.

[11] ID. — NUMBER OF CHICKENS KEPT BY DEFENDANTS — FINDING. —
In such action, where the number of chickens kept in defendants'
corrals was great enough to cause the clouds of dust of which
plaintiff complained, error in finding a greater number of chickens
kept by defendants than that shown by the evidence was harm-
less, the test being not the number of chickens kept by defendant
but the *quantum* of dust raised by them, whatever their number.

[12] ID. — CHARACTER OF DUST — FINDING — EVIDENCE — INFERENCE.—
In such action, evidence that the dust which came from defendants'
corrals and which settled on plaintiff's grapes was in the nature
of humus, that it was sticky, and that it could neither be blown off
nor washed off, warranted the inference that the dust was as de-
scribed in a finding that the dust was not the pure soil but was
impregnated with effluvia from the presence of the chickens.

[13] ID. — DUST FROM PLAINTIFF'S LAND — RELATION TO INJURY —
EVIDENCE.—In such action, the claim that plaintiff contributed to
his injury because some of the dust which settled on his trees,
vines, and grapes was caused by plaintiff's cultivation of his own
land, and that there is no evidence whereby the *quantum* of damage
due to his own conduct can be distinguished from that which was
caused by defendants' chickens, cannot be sustained, where the
evidence showed that the dust which arises from the cultivation
of plaintiff's soil may readily be blown or washed off the grapes,
whereas that which settled on them after defendants commenced
the business of raising chickens was so sticky that it clung to the
fruit and could not be blown or washed off, and that prior to the
commencement of defendants' chicken industry plaintiff's grapes
suffered no damages from dust, though he had habitually culti-
vated his land in the usual manner.

[14] Id.—Damages—Finding.—In such action it is immaterial whether the acreage covered by plaintiff's mature grape-bearing vines was or was not as large as that found by the trial court, where the trial court expressly found, in response to an issue tendered by the complaint, that plaintiff had been damaged in a specified sum, which finding is unchallenged except for the claim that some of the damage was caused by plaintiff himself in the cultivation of his land—a claim which is not tenable.

[15] Id.—Manner of Feeding Chickens—Negligence—Finding.—In such action, it did not matter that the defendants did or did not feed the chickens in a negligent manner, where the corrals were maintained in such a manner that the dust raised by the chickens was carried by the prevailing winds to plaintiff's land in great clouds, and that his property was substantially and directly injured thereby.

[16] Id.—Injunction—Decree—Certainty of.—In such action, that part of the decree in favor of plaintiff restraining the defendants and their servants from so maintaining, caring for, or feeding any chickens on the lands and premises occupied by the defendants, or any part or parcel thereof, so as to produce and which would or could produce such quantities of dust that the same or any part thereof will be carried by the winds across a described roadway to the lands occupied by plaintiff, is not subject to the objection that it is indefinite in that it does not advise defendants what they are restrained from doing.

[17] Id.—Injury from Business not Nuisance Per Se—Character of Decree.—Where the injury complained of results from a business which is not *per se* a nuisance, it being caused only by reason of the manner in which the business is conducted or by the surrounding circumstances, it is always proper for the court so to frame its decree that defendant's business will not be absolutely prohibited, if this can be done and still give to plaintiff the relief to which he is entitled.

[18] Id. — Evidence — Complaints from Neighbors. — In such action, the trial court did not err in sustaining an objection to a question whether any of the defendants' neighbors other than plaintiff had ever complained of the dust from the chicken-yard, which question was objected to on the ground that it was immaterial.

[19] Id.—Evidence.—Where the injury is to property and it is shown to have been direct and substantial, the fact that other neighbors than plaintiff made no complaint would neither mitigate the damage nor justify the acts of defendants.

[20] Id. — Maintenance of Other Chicken-yards — Evidence. — In such action, where one of defendants' witnesses was asked on his direct examination how the chicken-pens on other near-by ranches compared with those kept by defendants in respect to their

' sanitary conditions, the trial court was correct in sustaining an objection to the question made upon the ground that it was immaterial and irrelevant and upon the further ground that no basis for a comparison had been shown, where it would be no defense to defendants if they could show that other persons were committing a nuisance, and plaintiff did not complain of unsanitary conditions, but only of the dust raised by the scratching of the chickens.

---

(1) 29 Cyc., pp. 1165, 1184, 1195, 1241.   (2) 32 Cyc., p. 677. (3) 29 Cyc., pp. 1157, 1158.   (4) 29 Cyc., pp. 1190, 1192.   (5) 29 Cyc., pp. 1191, 1195.   (6) 29 Cyc., p. 1192.   (7) 29 Cyc., p. 1241. (8) 32 Cyc., p. 1156.   (9) 32 Cyc., p. 1156.   (10) 32 Cyc., p. 1241. (11) 32 Cyc., p. 1253.   (12) 32 Cyc., p. 1247.   (13) 32 Cyc., p. 1247. (14) 32 Cyc., p. 1251.   (15) 32 Cyc., p. 1155.   (16) 32 Cyc., p. 1253. (17) 32 Cyc., p. 1252.   (18) 32 Cyc., p. 1246.   (19) 32 Cyc., p. 1236 (Anno.), p. 1275 (Anno.).   (20) 32 Cyc., pp. 1162, 1246; 22 C. J., p. 750, sec. 839.

APPEAL from a judgment of the Superior Court of Los Angeles County. Albert Lee Stephens, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ford & Bodkin and H. L. Watt for Appellants.

Haas & Dunnigan for Respondent.

FINLAYSON, P. J.—This is an action to abate a nuisance by enjoining defendants from continuing to conduct their chicken corrals in such a manner that the dust therefrom will injure plaintiff's trees, vines, and grapes, and to recover damages for past injuries. The judgment, which was in favor of plaintiff, awarded damages in the sum of three hundred dollars and enjoined defendants from maintaining the nuisance. From this judgment the defendants have appealed.

The case presented by the complaint is substantially this: Plaintiff is the lessee of a thirty-acre parcel of land in Los Angeles County at the northeast corner of Pomona and San Gabriel Boulevards, the southerly half of his land being planted to walnut trees and the northerly half to grapevines. A dwelling-house, occupied by plaintiff, is on the northerly half of the tract. On a five-acre parcel of land,

situated on the westerly side of San Gabriel Boulevard, oppo-
site plaintiff's walnut grove and diagonally from his vine-
yard, defendants are maintaining a chicken ranch on which
they have a large number of chickens, estimated by plaintiff
to be between six thousand and seven thousand. The chick-
ens are confined in separate corrals which occupy the greater
portion of defendants' five-acre tract. These corrals are not
cemented, the floors thereof consisting of the natural soils
kept in a dry condition. Defendants scatter the chicken feed
on the ground in the corrals. There is nothing on the
ground, such as straw, to prevent the scratching of the
chickens from raising dust. By reason of the carelessness
of defendants, their negligent manner of feeding the chick-
ens and their failure to wet the ground or to cover its surface
with some material that will prevent the fowls from tearing
up the soil, great volumes of dust are produced by the
scratching of the chickens on the dry surface, particularly
at feeding times. Clouds of this dust are daily carried to
plaintiff's land by the prevailing winds, which blow from
southwest to northeast. The dust settles on plaintiff's wal-
nut trees, vines, and grapes and enters his dwelling-house.
It clings to the leaves and to the fruit, thereby rendering
the grapes unmarketable except at greatly reduced prices;
by reason whereof plaintiff, so he alleges, has been damaged
in the sum of four hundred dollars, his vines and walnut
trees will become stunted and retarded in their growth, and
he will suffer great and irreparable injury if defendants
shall continue to conduct their chicken ranch in the manner
heretofore pursued by them.

These allegations of the complaint the trial court found,
in substance and effect, to be true, except that certain unim-
portant details, not necessary to be enumerated, were not
found precisely as alleged in the complaint. The court also
found that if the defendants should employ modern and
reasonable methods, such as wetting the ground or paving
it, or feeding the chickens in inclosed sheds or buildings or
in straw litter, the production of dust in large volumes may
be prevented.

That part of the decree which gives to plaintiff injunctive
relief reads: "It is hereby . . . adjudged . . . : That the
defendants and each of them, their servants, agents and em-

ployees, be and they are hereby enjoined and restrained from so maintaining, caring for or feeding any chickens on the lands and premises occupied by said defendants, and in plaintiff's complaint described, or any part or parcel thereof,. so as to produce and which would or could produce such quantities of dust that the same or any part thereof will be carried by the winds across and to the East and Northeast of that certain roadway or street situate between the lands occupied by defendants and the lands occupied by plaintiff, and in the complaint herein described. Nothing herein contained shall be construed as preventing said defendants from maintaining or keeping chickens or other poultry upon the lands so occupied by said defendants, provided that the said defendants, their agents, servants and employees, shall so do in a manner which will prevent dust from being produced on said lands in such quantity as will cause the same to be carried across said street or roadway running between the lands of said defendants and the lands of said plaintiff in said complaint described.''

[1] Appellants' first point is that the complaint does not state a cause of action, it being claimed that the pleading fails to show that appellants are maintaining an actionable nuisance. In our opinion, the complaint states all the facts necessary to entitle respondent to the relief granted him. We may not say, as appellants urge us to declare, that dust arising from chicken corrals in such quantities as to cause substantial damage to respondent's property by injuring his trees, vines, and grapes is not a nuisance, even though this case is one of the first, if not the very first, of its kind. Upon the application of well-settled principles we think it clear that the maintenance of the chicken ranch in the manner described in the complaint is a nuisance. These principles are neither recent in origin nor doubtful in application.

[2] The ancient maxim, *sic utere tuo ut alienum, non laedas,* is the foundation of the well-established rule that no one may make an unreasonable use of his own premises to the material injury of his neighbor's property. While every person has exclusive dominion over his land and may subject it to such uses as will subserve his wishes and private interests, he is bound to have respect and regard for his neigh-

bors' rights.  [3]  Whether or not a use which in itself is
lawful is a nuisance depends upon a number of circum-
stances: locality and surroundings, the number of people liv-
ing there, the prior use, whether it is continual or occasional,
and the nature and extent of the nuisance and of the injury
caused thereby.  No hard-and-fast rule controls the subject.
The law relating to private nuisances is one of degree.  A
use that would be reasonable under one set of facts might
be unreasonable under another.  [4]  Location, priority of
occupation, and the fact that the injury is only occasional,
though matters to be considered, are not conclusive but are
to be considered in connection with all the circumstances of
the particular case; and whether the use is unreasonable or
not is an inference to be drawn from all the facts.  (*McCarty*
v. *Natural Carbonic Gas Co.*, 189 N. Y. 40 [12 Ann. Cas.
840, 13 L. R. A. (N. S.) 465, 81 N. E. 549].)

[5]  It is important to consider whether the acts com-
plained of in any particular case cause an injury to prop-
erty or only to the personal comfort of the complaining
party.  For there is a marked distinction between an action
for nuisance in respect to an act producing a material injury
to property, as where trees or fruit are injured by dust or
noxious gases, and an action brought in respect to an act
producing personal discomfort only, such, for example, as
noises, disagreeable smells, et cetera.  As to the latter, the
person complainining of the annoyance must submit, in the
interest of the public generally, to the discomfort usually
incident to the circumstances of the place and the trades
carried on around him.  But the same rule does not apply
where the injury is to property.  (See *St. Helen's Smelting
Co.* v. *Tipping*, 11 H. L. Cas. 642.)

The reports are filled with cases where the doctrine which
is applicable to the case at bar has been explained and ap-
plied.  Reference to a few of them will suffice.  In the lead-
ing case of *Fletcher* v. *Rylands*, L. R. 1 Ex. 265, it was
said: "The person whose grass or corn is eaten down by the
escaping cattle of his neighbor, or whose mine is flooded by
the water from his neighbor's reservoir, or whose cellar is
invaded by the filth from his neighbor's privy, or whose
habitation is made unhealthy by the fumes and noisome va-
pors of his neighbor's alkali works, is damnified without

any fault of his own; and it seems but reasonable and just that the neighbor who has brought something on his own property which was not naturally there, harmless to others so long as it is confined to his own property, but which he knows to be mischievous if it gets on his neighbor's, should be obliged to make good the damage which ensues if he does not succeed in confining it to his own property. But for his act in bringing it there no mischief could have accrued, and it seems but just that he should at his peril keep it there so that no mischief may accrue, or answer for the natural and anticipated consequences. And upon authority, this we think is established to be the law, whether the things so brought be beasts, or water, or filth, or stenches.''

In *Dunsbach* v. *Hollister*, 49 Hun, 352 [2 N. Y. Supp. 94], affirmed, 132 N. Y. 602 [30 N. E. 1152], the defendant was held liable for maintaining on his own land an uncovered pile of molding sand, from which, when the wind was in a certain direction, the sand was blown into plaintiff's residence, causing inmates discomfort and injuring the furniture.

In *Pennoyer* v. *Allen*, 56 Wis. 502 [43 Am. Rep. 728, 14 N. W. 609], it was held that any business which necessarily and customarily impregnates large volumes of the atmosphere with disagreeable, unwholesome, or offensive matter may become a nuisance to those occupying property in the vicinity, in case it is too near and the atmosphere is so contaminated as to substantially impair the comfort or enjoyment of the neighbors.

In *Brede* v. *Minnesota Crushed Stone Co.*, 143 Minn. 374 [6 A. L. R. 1092, 173 N. W. 805], it was held that the operation of a plant for quarrying and grinding limestone should be so restricted by injunction as to prevent the escape of dust which substantially interferes with the comfort of inhabitants in the vicinity. In so holding the court declared that relief should be granted though the business be a lawful one, and refuted the broad doctrine that a land owner may develop the resources of his property regardless of consequences incidental thereto.

The following additional authorities may be referred to as further illustrations of the rule which supports our conclusion that this complaint states a cause of action: *Tuebner*

v. *California St. R. R. Co.,* 66 Cal. 171 [4 Pac. 1162] ; *Sullivan*
v. *Royer,* 72 Cal. 248 [1 Am. St. Rep. 51, 13 Pac. 655] ; *Judson* v. *Los Angeles Suburban Gas Co.,* 157 Cal. 168 [21 Ann.
Cas. 1247, 26 L. R. A. (N. S.) 183, 106 Pac. 581] ; also the
cases cited in the notes to *Tate* v. *Mull,* 3 A. L. R. 312 (147 Ga.
195 [93 S. E. 212]), and *Pitner* v. *Shugart Bros.,* 11 A. L. R.
1401 (150 Ga. 340 [103 S. E. 791]), under the caption
"Dust as Nuisance."

Appellants cite with much confidence the case of *Wade* v.
*Miller,* 188 Mass. 6 [69 L. R. A. 820, 73 N. E. 849]. There
is nothing in that case to shake our conclusion that this com-
plaint states a cause of action. There the alleged nuisance
consisted of the characteristic noises and odors issuing from
a well-kept and clean chicken house and yard, and affected
personal comfort only. The noises and odors did not affect
injuriously the health or sensibilities of a normal person,
but merely caused annoyance to an invalid. [6] The law
of nuisance, where personal discomfort is the ground of
complaint, is applied only to normal persons—to persons of
ordinary sensibilities. In the instant case the nuisance caused
a direct and material injury to property, resulting in a sub-
stantial financial loss to respondent.

The rule applicable here is the one which was announced
by the Lord Chancellor in *St. Helen's Smelting Co.* v.
*Tipping, supra.* There, as here, the injury, or a consider-
able part of it, was to trees and fruits. It was held that
there was an actionable nuisance.

[7] There is no merit in the claim that the complaint
fails to show that appellants' use of their land was unrea-
sonable. True, the words "unreasonable use" do not appear
in the complaint; but the only inference which can be drawn
from all of the alleged facts is that the use was, as to re-
spondent, unlawful and unreasonable. [8] It cannot be
said that a person's use of his property is reasonable and
lawful where that use directly and substantially causes dam-
age to the property of another which could have been avoided
with reasonable care and without unreasonable effort or ex-
pense. (*Dunsbach* v. *Hollister, supra.*) [9] What con-
stitutes a reasonable use of one's property cannot be defined
by any certain, general rule, but this much seems indis-
putable: A reasonable use can never be construed to include

those uses which produce destructive volumes of dust, to the material injury of the property of those who dwell in the neighborhood. (See *Bohan* v. *Port Jervis Gas Light Co.*, 122 N. Y. 18 [9 L. R. A. 711, 25 N. E. 246].)

It was said in *McCarty* v. *Natural Carbonic Gas Co.*, *supra*, that the "extent, more than the nature, of the injury, the *quantum*, rather than the *damnum*, constitutes the nuisance." Some dust is generally created by the natural and ordinary use of land in or near a settlement; and while this may sometimes be annoying to the neighbors, it is a part of the price paid for living where there are neighbors. But when the dust is so unusual and excessive as to cause substantial and direct injury to the property of a neighbor, causing him a material financial loss, the use is unreasonable. In *Tuebner* v. *California Street R. R. Co.*, *supra*, our supreme court says: "A person may not use his own property, even in and about a business in itself lawful, if it be used in such a manner as to seriously interfere with another in the enjoyment of his right in the use of his property." "Nor can *any* use of one's own land," says the court in *Susquehanna Fertilizer Co.* v. *Malone*, 73 Md. 268 [25 Am. St. Rep. 595, 9 L. R. A. 737, 20 Atl. 900], "be said to be a reasonable use which deprives an adjoining owner of the lawful use and enjoyment of this property." (Italics ours.) In *Bohan* v. *Jervis Gas Light Co.*, *supra*, the New York court of appeals says: "A reasonable use can never be construed to include those uses which produce destructive vapors and noxious smells, and that result in material injury to the property and to the comfort of the existence of those who dwell in the neighborhood."

The rule applicable to the present case is forcefully stated by the supreme court of Wisconsin in *Pennoyer* v. *Allen*, *supra:* "The ownership of land carries with it the rightful use of the atmosphere while passing over it. Title to land gives the owner the right to impregnate the air upon and over the same with such smoke, vapor and smells as he desires, provided he does not contaminate the atmosphere to such an extent as to substantially interfere with the comfort or enjoyment of others, or injure the use of their property. But air is movable, and constantly flowing from the premises of one to those of another, and hence, when it becomes

thickly impregnated with putrid substances, it necessarily flows on to the adjacent premises in one direction or another. This being so, it follows that any business which necessarily and constantly impregnates large volumes of the atmosphere with disagreeable, unwholesome or offensive matter, may become a nuisance to those occupying adjacent property, in case it is so near, and the atmosphere is contaminated to such an extent as to substantially impair the comfort or enjoyment of such adjacent occupants. When such comfort and enjoyment are so impaired, and compensation is demanded, it is no defense to show that such business was conducted in a reasonable and proper manner, and with more than ordinary cleanliness, and that the odors so sent over and upon such adjacent premises were only such as were incidental to the business when properly conducted. It is the interruption of such enjoyment and the destruction of such comfort that furnishes the ground of action, and it is no satisfaction to the injured party to be informed that it might have been done with more aggravation. The business is lawful; but such interruption and destruction is an invasion of private rights, and to that extent unlawful. It is not so much the manner of doing as the proximity of such a business to the adjacent occupant which causes the annoyance. A business necessarily contaminating the atmosphere to the extent indicated should be located where it will not necessarily deprive others of the enjoyment of their property, or lessen their comfort while enjoying the same.''

[10] It is claimed that the complaint does not designate with sufficient certainty the distance from appellants' chicken ranch to respondent's land. If this were an action to enjoin in advance the creation of a contemplated nuisance, i. e., if it were an action to enjoin a threatened act, not yet begun, but which might or might not become a nuisance if and when it is consummated—and that was the situation presented by the case cited by appellants, *O'Reilly* v. *Perkins,* 22 R. I. 364 [48 Atl. 6]—then it would have been incumbent upon the plaintiff to allege every fact which might be necessary to enable the court to see that plaintiff's apprehension of an appreciable injury to his property was well founded. In such an action it doubtless would be necessary to allege with reasonable certainty the distance between the

two properties. But this is not an action to enjoin the creation of that which respondent only apprehends will result in dust being carried to his property. Here, if the allegations of the complaint be true—and the court found that they are true—it has already been demonstrated *ex post facto* that appellants' chicken ranch is so close to respondent's land and the two properties are so situated with respect to each other that the dense clouds of dust which are raised by the scratching of the chickens do settle upon and injure respondent's trees, vines, and grapes.

[11] It next is claimed that certain of the findings are not supported by the evidence. Many, if not all, of the findings thus objected to relate to immaterial matters, and if they are not sustained by the evidence the error is harmless. For example, the court found that the approximate number of chickens maintained by appellants is between three thousand and four thousand, whereas the evidence shows, so it is claimed, that appellants kept but two thousand eight hundred chickens. But whatever the correct figure may be, the number of chickens kept in appellants' corrals was great enough to cause the clouds of dust of which respondent complains; and the test is not the number of chickens kept by appellants but the *quantum* of dust raised by the chickens, whatever their number.

[12] It is claimed that there is no evidence to support the finding that the dust was not the pure soil but was impregnated with effluvia from the presence of the chickens. The evidence shows that the dust which came from appellants' corrals and which settled on respondent's grapes was in the nature of humus, that it was sticky, and that it could neither be blown off nor washed off. This evidence warranted the inference that the dust was as described in the finding. [13] It also claimed that the evidence shows, without contradiction, that not all of the dust which settled upon respondent's trees, vines, and grapes was attributable to the chickens, but that some of it was caused by respondent's cultivation of his own land. Wherefore it is argued that respondent contributed to his injury, and that there is no evidence whereby the *quantum* of damage due to his own conduct can be distinguished from that which was caused by appellants' chickens. But the evidence shows that the dust

which arises from the cultivation of respondent's soil may readily be blown or washed off the grapes, whereas that which settled on them after appellants commenced the business of raising chickens was, as we have pointed out, so sticky that it clung to the fruit and could not be blown or washed off. It likewise was shown that prior to the commencement of appellants' chicken industry respondent's grapes suffered no damages from dust, though he had habitually cultivated his land in the usual manner.

[14] It is claimed that the evidence shows that the amount of acreage covered by respondent's mature, grape-bearing vines is not so large as the court found. Any discrepancy in this particular between the evidence and the finding could not possibly have affected the result. The court expressly finds, in response to an issue tendered by the complaint, that respondent has been damaged in the sum of three hundred dollars. This finding is unchallenged except for the claim that some of the damage was caused by respondent himself in the cultivation of his land—a claim which, for reasons already stated, is not tenable. Since the finding that respondent was damaged in the sum of three hundred dollars is unquestioned, save in the one untenable particular above mentioned, it follows that it is immaterial whether the acreage covered by the mature vines was or was not as large as that found by the court. [15] Neither does it matter that the appellants did or did not feed the chickens in a negligent manner. The fact remains that the corrals were maintained in such a manner that the dust raised by them was carried by the prevailing winds to respondent's land in great clouds, and that his property was substantially and directly injured thereby. (See *Bohan* v. *Port Jervis Gas Light Co., supra,* and *Frost* v. *Berkeley Phosphate Co.,* 42 S. C. 402 [46 Am. St. Rep. 736, 26 L. R. A. 693, 20 S. E. 280].) In the case last cited the court says: " . . . if one uses his own land for the prosecution of some business from which injury to his neighbor would either necessarily or probably ensue, he is liable if such injury does result, even though he may have used reasonable care in the prosecution of such business."

[16] The next assignment of error goes to the form of the decree, it being claimed that the part which grants in-

junctive relief is indefinite in that it does not advise appellants, what they are restrained from doing. We see no force in this objection. The decree seems to be as clear and certain as the circumstances will permit. (See *City of Ennis* v. *Gilder*, 32 Tex. Civ. App. 351 [74 S. W. 585]; and *Stodder* v. *Rosen etc. Co.*, 241 Mass. 245 [22 A. L. R. 1197, 135 N. E. 251].) [17] Where the injury complained of results from a business which is not *per se* a nuisance, it being caused only by reason of the manner in which the business is conducted or by the surrounding circumstances, it is always proper for the court so to frame its decree that defendant's business will not be absolutely prohibited, if this can be done and still give to plaintiff the relief to which he is entitled. (*Collins* v. *Wayne Iron Work*, 227 Pa. St. 326 [76 Atl. 24]; 20 R. C. L., p. 482.) Had the decree simply adjudged that defendants so conduct their chicken ranch that plaintiff's property would not be injured thereby, the cases cited by appellants would have been in point. But here the decree clearly and specifically enjoins appellants from so maintaining their chickens and the premises on which they are kept as to produce dust in such quantities that any of it will be carried by the winds across the highway to respondent's land. This is as specific as was the decree which was directed by the Pennsylvania supreme court in *Collins* v. *Wayne Iron Works, supra.*

[18] During the direct examination of one of the defendants he was asked by his counsel if any of his neighbors other than plaintiff had ever complained of the dust from the chicken-yard. This question was objected to on the ground that it was immaterial. The objection was sustained. In this the court did not err. Appellants claim that the evidence was admissible upon the theory that whether the injury complained of was or was not a nuisance could only be determined by its effect on other persons. If the action had been based upon personal discomfort claimed to have been caused by the dust, then it is possible that the question would have been proper for the purpose of showing that only persons of unusual and abnormal sensibilities would be affected by the alleged nuisance. [19] But whatever the rule may be in such an action, it is quite evident that where, as here, the injury is to property and

it is shown to have been direct and substantial, the fact that other neighbors made no complaint would neither mitigate the damage nor justify appellants' acts.

[20]    Another of the defendants' witnesses was asked on his direct examination how the chicken-pens on other near-by ranches compared with those kept by defendants in respect to their sanitary conditions.    Plaintiff's counsel objected to the question upon the ground that it was immaterial and irrelevant and upon the further ground that no basis for a comparison had been shown.    In sustaining the objection the court was clearly correct.    It would be no defense to defendants if they could show that other persons were committing a nuisance.    Moreover, respondent has not complained of unsanitary conditions; he complains only of the dust raised by the scratching of the chickens.    We find no error in the record.

The judgment is affirmed.

Works, J., and Craig, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal was denied by the supreme court on November 20, 1924.

All the Justices concurred.