[No. 15720. Department Two.—May 2, 1895.]

## THE PEOPLE EX REL. RICKS WATER COMPANY, RESPONDENT, *v.* ELK RIVER MILL AND LUMBER COMPANY, APPELLANT.

ABATEMENT OF NUISANCE — POLLUTION OF STREAM—PLEADING — FINDINGS.—In an action to enjoin the pollution of a river, where the complaint avers that the defendant maintained on the banks of the river a sawmill and also a cookhouse, outhouses, barn, and stables, and other fixtures, which usually accompany a sawmill, and that it caused and permitted sewage, offal, waste, and fetid matter from the sawmill, cookhouse, and stables, to be drained and deposited in the stream, and the findings show that it had allowed a large manure-pile to accumulate from the stables upon the banks of the stream, which polluted its waters, and that it also maintained near the stream a corral, or hogpen, from which the waters were further polluted, and that as matter of law the hogpen and manure-pile constitute nuisances, which the defendant by the decree was enjoined from maintaining, the findings are sufficiently within the issues, and the fact that the court did not suppress the stable, rather than the use of it, rendering it a nuisance, is not an error of which the defendant can complain.

ID.—PUBLIC USE OF STREAM—POLLUTION—PUBLIC NUISANCE.—Where the waters of a river at and below the defendant's mill and dam are used by a considerable number of persons who reside along the banks of the stream below the mill and dam, such use constitutes a public use, which would make a pollution of the water by any unreasonable use a public nuisance.

ID.—RIGHTS OF RIPARIAN PROPRIETOR—REASONABLE AND UNREASONABLE USE.—An upper riparian proprietor is entitled to a reasonable use of the water as against lower riparian proprietors; but he has no right to pol-

lute the stream by fouling its waters, or putting filthy matter into it; and to maintain stables and hogpens directly upon the banks of a stream used for domestic purposes by lower riparian owners is an unreasonable use of the stream by an upper riparian owner.

ID.—INCIDENTAL POLLUTION RESULTING FROM REASONABLE USE.—If stock, not confined upon the river-banks, following their natural instincts, cause the pollution of the stream, or if a hogpen and a cow-stable are at a reasonable distance from the river, and the winter rains wash some impurities into the stream, lower riparian proprietors cannot complain of such incidental pollution.

ID.—USE OF LAND FOR DAIRY—DIRECT POLLUTION OF STREAM—CHANGE OF USE.—If the conformation of defendant's land is such that he cannot carry on a dairy without putting filth directly into the waters of a stream used by others for domestic purposes he must find some other use for the land.

APPEAL from a judgment of the Superior Court of Humboldt County.

The facts are stated in the opinion of the court.

*F. A. Cutler*, and *J. M. Buck*, for Appellant.

The court erred in making finding outside the issues. The plaintiff must recover, if at all, upon the cause of action set out in his complaint and not upon some other which may be developed by the proofs. (*Mondran* v. *Goux*, 51 Cal. 151, 153; *Reed* v. *Norton*, 99 Cal. 617; *Ortega* v. *Cordero*, 88 Cal. 225; *Morenhout* v. *Barron*, 42 Cal. 605; *Gregory* v. *Nelson*, 41 Cal. 284; *Green* v. *Covillaud*, 10 Cal. 331; 70 Am. Dec. 725; *Murdock* v. *Clarke*, 59 Cal. 693.) Elk river and its tributaries are private streams, and the property of those over whose lands they flow, who have an absolute right to a reasonable use of the waters for domestic and manufacturing purposes. (Gould on Waters, secs. 46, 108; *Lux* v. *Haggin*, 69 Cal. 359, 392.) The fact that the Ricks Water Company takes water from Elk river, for the purpose of selling such water to the residents of Eureka, does not give them any right in addition to what they have as a riparian proprietor. (*Burden* v. *Stein*, 27 Ala. 104; 62 Am. Dec. 763, 764; *Haupt's Appeal*, 125 Pa. St. 211.) Even if Elk river were a floatable stream defendant had a right to put his dam in the stream, and build its mill

by it, and keep cows and hogs on its banks. The people
have no legal right to use the waters of a floatable stream
for any purpose except navigation. (*Attorney General*
v. *Delaware etc. R. R. Co.*, 27 N. J. Eq. 638, 639, 640;
*Heilbron* v. *Fowler Switch Canal Co.*, 75 Cal. 432, 433;
7 Am. St. Rep. 183; *Cobb* v. *Davenport*, 32 N. J. L. 383.)
The Ricks Water Company can claim no public rights
by reason of its business. (*Acquackanonk Water Co.* v.
*Watson*, 29 N. J. Eq. 373; *Stein* v. *Burden*, 24 Ala. 130;
60 Am. Dec. 453–56; *Proprietors etc.* v. *Braintree etc.
Co.*, 149 Mass. 478; *Helfrich* v. *Catonsville Water Co.*,
74 Md. 269; 29 Am. St. Rep. 245.) If it is necessary
for the people to have the waters of Elk river for any
public purpose they can only obtain them by an exercise
of the right of eminent domain. (*Barre Water Co.* v.
*Carnes*, 65 Vt. 626; 36 Am. St. Rep. 891; *Saunders*
v. *Bluefield Water Works etc. Co.*, 58 Fed. Rep. 133;
*Brookline* v. *Mackintosh*, 133 Mass. 223.) The legisla-
ture has provided that the right of eminent domain
may be exercised in behalf of the Ricks Water Com-
pany. (Code Civ. Proc., sec. 1238, subd. 3; Const., art.
XIV, sec. 1; *St. Helena Water Co* .v. *Forbes*, 62 Cal. 182;
45 Am. Rep. 659; *Burden* v. *Stein, supra.*) As it is
found that all the streams in question are private prop-
erty, the state has no legal rights therein; so plaintiff's
case falls to the ground. (*City of Grand Rapids* v. *Pow-
ers*, 89 Mich. 94; 28 Am. St. Rep. 282.) Any damage ac-
cruing to an inferior proprietor upon Elk river arising
from the sources complained of herein is *damnum absque
injuria.* (*Helfrich* v. *Catonsville Water Co., supra: Penn-
sylvania Coal Co.* v. *Sanderson*, 113 Pa. St. 126; 57 Am.
Rep. 445; Cooley on Torts, 93, 699; *Merrifield* v. *Wor-
cester*, 110 Mass. 219; 14 Am. Rep. 592; *Losee* v. *Buch-
anan*, 51 N. Y. 484; 10 Am. Rep. 623; *Rockwood* v.
*Wilson*, 11 Cush. 221; *Hughes* v. *Anderson*, 68 Ala. 280;
44 Am. Rep. 147; *Stein* v. *Burton*, 29 Ala. 127; 65 Am.
Dec. 394; *Phelps* v. *Nowlin*, 72 N. Y. 39; 28 Am. Rep. 93;
*Pixley* v. *Clark*, 32 Barb. 268; 35 N. Y. 520; 91 Am.
Dec. 72; *Barnard* v. *Sherley*, 135 Ind. 547; 41 Am. St.

Rep. 454; *Smith* v. *Kenrick,* 7 Com. B. 515–64; *Wilson* v. *Waddell,* L. R. 2 App. Cas. 95; *Rylands* v. *Fletcher,* L. R. 3 H. L. 338; *West Cumberland etc. Co.* v. *Kenyon,* L. R. 6 Ch. Div. 77.)

*J. F. Puter, Barclay Henley, Attorney General W. H. H. Hart,* and *J. N. Gillett,* for Respondent.

In order to preserve the public health and the general welfare the legislature is empowered to pass such laws as fall properly within the police powers of the state, without subjecting it to actions for damages, or without first making provisions to compensate persons damaged or injured thereby. If an injury follow the passage of such an act it is *damnum absque injuria.* (Dillon on Municipal Corporations, 3d ed., sec. 141; 18 Am. & Eng. Ency. of Law, 749; *State* v. *Wheeler,* 44 N. J. L. 88; *Mayor of New York* v. *Ferguson,* 23 Hun, 594; *Lewis* v. *Stein,* 16 Ala. 214; 50 Am. Dec. 177; *Mugler* v. *Kansas,* 123 U. S. 656.) By the general police powers of a state persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state. (Cooley's Constitutional Limitations, 4th ed., 715; *Bertholf* v. *O'Reilly,* 74 N. Y. 521; 30 Am. Rep. 323.) Parties must submit to proper police regulations, even though the same operate to injure their business and depreciate their property. (*Platte etc. Milling Co.* v. *Mc-Dowell,* 17 Col. 376; Mills on Eminent Domain, sec. 7.) Section 2349 of the Political Code declares Elk river to be a navigable stream. The court failed to find otherwise. If the legislature has any authority to declare a stream a public stream, then Elk river is certainly one; for by successive acts during the past twenty years Elk river has been declared navigable. (Stats. 1860, p. 159; Stats. 1885, p. 220; Stats. 1891, p. 96; *Ellis* v. *Carey,* 30 Ala. 725; *Morrison* v. *Coleman,* 87 Ala. 655; *American Riv. etc. Co.* v. *Amsden,* 6 Cal. 443; *Cardwell* v. *Sacramento,* 79 Cal. 347.) The pollution of a public stream is a public nuisance. The public has the right to the use

of the stream, and of the water therein at any time, and no user of the same in any manner for any length of time can deprive the public of this use. (Woods on Nuisances, sec. 228, and cases cited.) A person cannot gain a prescriptive right to maintain a public nuisance. (*People* v. *Gold Run* etc. *Min. Co.*, 66 Cal. 138; 56 Am. Rep. 80.) The claim that the use of the stream was reasonable is immaterial, and can have no effect upon the rights of the parties hereto. (*Stockport Waterworks Co.* v. *Potter*, 7 Hurl. & N. 167; *Red River Roller Mills* v. *Wright*, 30 Minn. 249; 44 Am. Rep. 194; Woods on Nuisances, secs. 552, 557.)

TEMPLE, J.—This appeal is by the defendant from the judgment upon the judgment-roll.

The action was brought on relation of the Ricks Water Company to abate certain structures as nuisances. Among other things it was charged that the defendant had constructed and was maintaining on the banks of the south fork of Elk river "a large sawmill, and also a cookhouse, outhouses, barn, and stables, and other fixtures which usually accompany a sawmill."

It was averred "that said defendant has caused and permitted, and does cause and permit, all sewage, offal, waste, and fetid matter from said sawmill, cookhouse, and stables to be drained and deposited in the waters of said stream, and continues to do so, thereby contaminating, polluting, and rendering the same unwholesome and unfit for culinary and other generally domestic purposes, and offensive to the senses."

As to most of the structures mentioned, the court found that they did not constitute nuisances, but it was found as follows: "That on the banks of said stream, just above the milldam, defendant had erected a large stable in which it houses from twenty-five to thirty head of cows. That the droppings from these cattle are deposited upon the banks of said stream, and near thereto, where the land gradually slopes to the same.

"That there now exists at said point a pile of manure

about seventy feet in length, eight feet deep, and sixteen to eighteen feet in width, and which has been accumulating there for years. That the defendant allows and permits this large pile of manure to lie there and rot on the bank of said stream, and the drainage therefrom flows directly into the waters of said stream and pollutes the same, and renders the waters thereof offensive to the senses, and unwholesome and unfit for domestic uses. That defendant also maintains near said stream a corral or pen in which it keeps about twenty-five hogs. That the said stream forms one side of said pen, and the urine and droppings and filth from said hogs find their way into said stream, thereby polluting the waters thereof, and rendering the same offensive to the senses, and unwholesome and unfit for domestic uses."

And as matter of law it was found that the hogpen and manure-pile constitute nuisances, and defendant was enjoined from maintaining them.

From this part of the decree defendant appeals, and his first point is that this finding is not within the issues.

The hogpen and manure-pile are not mentioned in the complaint, and it is not found that they are such fixtures. as usually accompany a sawmill. The complaint, however, speaks of outhouses and stables, and I think the findings sufficiently show that the cow-stable and hogpen are maintained in connection with the mill plant; and, notwithstanding appellant's criticism, that the manure-pile is caused by the cow-stable. Beyond this the complaint seems to be that the court did not suppress the stable itself rather than the use of it, which renders it a nuisance. I do not think there was any error here of which the defendant can complain.

2. The court found that Elk river is not a navigable stream. It is contended that it follows from that fact that fouling its waters cannot constitute a public nuisance. But it is found that " the waters of Elk river at and below the defendant's dam were, and have been, and now are, used by a considerable number of persons, who reside along the banks of said stream below the defend-

ant's mill and dam." This constitutes such a public use as would make a pollution of the water by any unreasonable use a public nuisance.

We may leave out of view, therefore, the claims of the Ricks Water Company and the inhabitants of the city of Eureka altogether. While, as to lower riparian owners, the defendant is entitled to a reasonable use of the water, he has no right to pollute the stream by putting such matter directly into it.

The decision does not go to the extent that appellant apprehends. It does not determine that one may not depasture stock upon the lands comprising the watershed drained by the river, because they would necessarily pollute the water, nor that he cannot maintain stables and hogpens upon the land, but only that they must not be in, or directly upon, the banks of the stream. It holds that this is an unreasonable use of such streams by a riparian owner as against lower riparian owners. But if stock, not confined upon the river-banks, following their natural instincts cause such pollution it would be a different matter. So, if the hogpen and the cowstable were at a reasonable distance from the river, the fact that the winter rains washed some impurities into the stream would be something of which lower riparian proprietors could not complain. The acts enjoined are equivalent to actually putting the polluting material directly into the water. If the conformation of defendant's land is such that he cannot carry on a dairy without putting such filth directly into the water, then he must find some other use for the land. This seems to be the effect of the rule laid down in *People* v. *Gold Run*, 66 Cal. 138; 56 Am. Rep. 80.

The judgment is affirmed.

McFARLAND, J., and HENSHAW, J., concurred.

Hearing in Bank denied.