[S. F. No. 13309. In Bank.—August 1, 1930.]

HENRY W. THOMPSON et al., Respondents, v. KRAFT CHEESE COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

Morrison, Hohfeld, Foerster, Shuman & Clark for Appellants.

George H. Harlan for Respondents.

THE COURT.—This is an appeal from a judgment of the Superior Court of Marin County, enjoining defendants from discharging waste liquids into a branch of a creek running through the adjoining properties of plaintiffs and defendant corporation, and from maintaining cesspools in such a manner as to be or become a private nuisance.

Plaintiffs and defendant corporation own adjoining properties. Plaintiffs use their land as a residence and as a

hog ranch. Defendant corporation operates a factory for the manufacture of cheese. A branch of Nicasio Creek has its origin in the land of defendant corporation, and runs in a northerly direction through the land of defendant corporation and the immediately adjoining land of plaintiffs. Plaintiffs purchased their property in May, 1926, and in September of the same year went to live there. Their predecessor had raised chickens, hogs and cows for some years, and plaintiffs were attempting to raise a herd of pure-bred hogs for market and breeding purposes. In May, 1927, the herd comprised about 157 hogs.

Defendant corporation purchased its property in May, 1927, from the Western Cheese and Butter Company, which had been engaged in the same business. The factory continued in operation, with defendant Cramer as superintendent. Defendant Ray was general manager of defendant corporation.

Certain waste liquids resulted from the operation of the factory, and required disposal. These liquids were principally dirty water which had been used in the washing of floors, machinery and utensils, together with a certain amount of whey which escaped from the cheese sacks on the floor. The Western Cheese and Butter Company had for about nine years prior to this action maintained a cesspool or septic tank to receive these liquids, which, when full, overflowed and discharged them into the creek at a place close to the boundary line dividing the property of plaintiffs and that of defendant corporation. The defendant corporation continued to discharge these waste liquids in the same manner.

In May or June, 1927, plaintiffs' hogs became sickly. Dr. Wood, a veterinarian, diagnosed their ailment as a chronic infection, coupled with a round worm infestation acquired as a result of wallowing in contaminated food, garbage and offal. Dr. Busher, also a veterinarian, confirmed this opinion, and was of the belief that the refuse from the cheese factory which accumulated on the stream bed and banks where the hogs were accustomed to wallow. furnished a particularly satisfactory place for the breeding of germs. In treating the pigs, he had some success with those that were kept away from the creek, but those that broke away and managed to reach their old wallowing place

became re-infected. He gave this as his conclusion: "Assuming a continued discharge from the cheese factory into the stream above the Thompson property, I would not consider it safe to attempt to raise hogs on the Thompson property unless the hogs were kept away from the creek." He also testified, however, that the round worm infestation could have been contracted in the absence of such discharge.

As a result of the infection and the round worm infestation, many of the hogs died, and others were finally sold at a low price in November, 1927. In October, 1927, plaintiffs brought this action, asking for damages and equitable relief. The court gave judgment in the sum of $500, of which $200 was for depreciation in the value of the hogs; $100 for plowing and disinfecting the contaminated soil; and $200 for depreciation in the value of the land. The court also granted a permanent injunction, in the following terms: "that the plaintiffs as such owners of said lands do have and recover judgment against the defendant Kraft Cheese Company of California as owner of the lands second hereinabove described, and also its servants, agents and employees, and particularly the defendants Don Ray and Otto Cramer; that they and each of them be, and they are hereby perpetually enjoined and restrained from emptying, throwing, discharging or permitting to escape, any dirty water, sour milk, slops, refuse, offal, or other liquid or semi-liquid matter, either directly or indirectly, by means of cesspools or otherwise, into said branch of Nicasio Creek or directly upon lands of plaintiffs in such a manner that the same may by the force of gravity or by the winter rains be washed into said branch of Nicasio Creek where the same flows through the lands of plaintiffs; and that said defendants and each of them be further perpetually enjoined and restrained from so maintaining and operating said cesspools or any of them in such a manner as to be or become a private nuisance to the plaintiffs or those residing upon the lands of plaintiffs hereinabove described, and preventing the use and enjoyment of said premises in the usual or customary manner, or interfering with the comfortable enjoyment or the free use of said real property hereinabove described; and judgment is hereby given that said defendants above named be, and each of them is hereby perpetually

enjoined and restrained from committing any of the acts hereinabove mentioned.''

The appeal is taken from this part of the judgment.

■ The first point of defendants is that the granting of an injunction was improper because there was no showing of reasonable apprehension of certain, substantial and irreparable injury. It is pointed out that after the commencement of the action, the system of disposal of waste matter was changed. The old cesspool was turned into a receiving tank, and from it, when full, an automatic pump conveyed the contents into a series of additional septic tanks which were covered on top, but allowed for seepage into the soil of the factory land. The theory was that filtration through the soil would have a tendency to purify the water. Defendants contend that the evidence shows that the original nuisance has now been practically abated, and therefore, under the well-settled rule, an injunction should not be granted.

In opposition to this contention stands the finding of the court that the discharge from the pump ''flows into said cesspools, but that the same from time to time finds its way into said branch of Nicasio creek and finally onto the lands of plaintiffs, and that said method of disposing of said contents of said old cesspool by the defendants herein is a mere subterfuge and postponement of the recurrence of the conditions existing at the commencement of this action, and will not and cannot keep the contents of said cesspool out of Nicasio creek . . . That the existence of said holes full of putrid water in the vicinity of plaintiffs' residence causes and will continue to cause a continuing nuisance and menace to the health of plaintiffs, and will render their said premises less capable of enjoyment and will breed large numbers of mosquitoes and disease-bearing insects, and will continue to pollute and keep polluted the waters of said Nicasio creek.''

An examination of the record shows considerable conflict in the testimony, but we think there is sufficient evidence to support the finding that the nuisance had not been abated. The system got out of order. The first pump proved inadequate; and a larger one was installed. Frank G. Veath, state sanitary inspector, testified that some of the discharge from the cesspools found its way to the creek, by overflow

and by underground seepage. Similar testimony was given by A. W. Sisson, of the health department of Marin County, who, together with Ed Ross, chief state sanitary inspector, examined the property on several occasions between September, 1927, and February, 1928. Undoubtedly the new system was an improvement over the old, and the record hardly substantiates the description of it as a "mere subterfuge"; but it does not appear that it has wholly removed all cause for complaint.

Defendants further claim that the injunction is too broad in its scope. It is urged that it should have been limited to the summer months, and that it should not have prohibited the discharge of liquids irrespective of nature and quantity. It is true that the bulk of the testimony relates to conditions during the dry season, when the stream becomes so low that its flow is not perceptible above the bed of the stream, and the water collects in a series of isolated pools. It also appears that plaintiffs kept their hogs away from its banks in the winter for fear of their drowning. But the record does not support the conclusion that the discharge during the rainy season was without substantial injury to plaintiffs. It rather appears that the noxious odors continued throughout the year, and that a portion of the discharged material was deposited in the depressions of the stream bed during the winter to add to the pollution which grew more marked in the summer season. Moreover, the rains sometimes filled the cesspools and caused them to overflow directly into the stream.

We are nevertheless disposed to agree with defendants that the injunction is too broad in its provision restraining them from discharging or permitting to escape "*any* dirty water, sour milk, slops, refuse, offal, or other liquid or semi-liquid matter." The vice of this provision is that it ignores the question of actual injury, and is framed so as to cover the slightest discharge, whether it causes any substantial pollution of the stream or not. It should have been limited to prohibiting such discharge as would cause substantial injury to the party seeking relief. (*Fisher* v. *Feige*, 137 Cal. 39 [92 Am. St. Rep. 77, 59 L. R. A. 333, 69 Pac. 618] ; *Peterson* v. *City of Santa Rosa*, 119 Cal. 387 [51 Pac. 557] ; *McMenomy* v. *Baud*, 87 Cal. 134 [26 Pac. 557] ; *Singer* v. *James*, 130 Md. 382 [100 Atl. 642] ; *Win-*

*chell* v. *City of Waukesha*, 110 Wis. 101, 84 Am. St. Rep. 902, 85 N. W. 668]; *Stamford Extract Mfg. Co.* v. *Stamford Rolling Mills Co.*, 101 Conn. 310 [125 Atl. 623]; *McDonough* v. *Russell-Miller Milling Co.*, 38 N. D. 465 [165 N. W. 504]; 5 Pomeroy's Equity Jurisprudence, 2d ed., sec. 1948.)

█ Plaintiffs do not attack these authorities, and the soundness of the rule they state is unquestioned. It is claimed, however, that this rule is inapplicable here because the situation is covered by the express ·provisions of the Public Health Act of 1907 (Deering's General Laws 1923, Act 6238]). Section 2 of this statute reads, in part, as follows: "It shall be unlawful to discharge, drain or deposit, or cause or suffer to be discharged, drained or deposited any sewage, garbage, feculent matter, offal, refuse, filth, or any animal, mineral, or vegetable matter or substance, offensive, injurious or dangerous to health, into any springs, streams, rivers, lakes, tributaries thereof, wells or other waters used or intended to be used for human or animal consumption or for domestic purposes . . . without a permit from the state board of health as hereinafter provided." Section 3 provides, in part: "Any county, city and county, city, town, village, district, community, institution, person, firm or corporation, who shall deposit . . . any sewage, sewage affluent or other substance by the terms of section two of this act forbidden to be so deposited or discharged, without having an unrevoked permit so to do, as in this act provided, may be enjoined from so doing by any court of competent jurisdiction at the suit of any person or municipal corporation whose supply of water for human or animal consumption or for domestic purposes is or may be affected, or by the state board of health." Immediately following is this statement: "Anything done, maintained, or suffered, in violation of any of the provisions of section 2 or section 3 of this act shall be deemed to be a public nuisance, dangerous to health, and may be summarily abated as such."

It is apparent that this statute declares the prohibited acts to be a *public nuisance*, and purports to give a private person the remedy of suit to enjoin, irrespective of injury to himself. Such an interpretation of the intent of the legislature is, however, to be avoided, for it is doubtful whether even an express statutory enactment can enable a litigant to

demand from a court of equity relief which would invade the property rights of another, unless the plaintiff can show the basic ground for such relief, namely, substantial injury. In *Frost* v. *City of Los Angeles,* 181 Cal. 22 [6 A. L. R. 468, 183 Pac. 342], this court had before it an act (Stats. 1913, p. 793), in many respects similar to the one here involved. It provided, in brief, that the furnishing of water which was polluted or dangerous to health was unlawful; that any person or corporation desiring to supply water for domestic use had first to obtain a permit. Anyone whose supply of water was taken or received from a person or corporation engaged in the business and having no permit might maintain an action to enjoin the continuance of such furnishing of water. Mr. Justice Shaw said in his opinion (p. 30) : ''We have said that a private person cannot maintain an action to enjoin a public nuisance unless it is specially injurious to himself. The plaintiff in this case is taken out of the operation of this rule solely because of the permission given to him by the state in this act to maintain this action on its behalf, without showing special injury to himself. The state may, of course, grant this permission to any citizen to act in its behalf. But it must be presumed that the legislature did not intend to change in any other respect the principles of equity regarding injunctions, and consequently that when a citizen applies to a court of equity for relief, under such authority, his rights are no greater with respect to the merits of the case and the duty of a court of equity to grant relief, than in any other action of equitable cognizance. The general principles of equity governing the issuance of injunctions in such a case must be the same and like reasons must be shown as in other cases of the same character. . . . The plaintiff is driven to rest exclusively upon his technical right under the act to enjoin the continuance of the water supply, simply because the state has issued no permit therefor. The established fact is that there is no occasion for interference by the state or by any other person. The only right is the bare technical right to insist that a permit be obtained before the city delivers any more water to its inhabitants for human consumption. . . . The refusal of such injunction would deprive the plaintiff of no right beneficial to himself or others and would put him to no inconvenience

whatever. Under these conditions a court of equity is not bound to grant an injunction."

■ Although the foregoing seems conclusive against plaintiffs on the matter of the relevancy of the Public Health Act, it is unnecessary to rest our decision upon this case alone, for it is obvious from a reading of the complaint that it was not framed so as to state a cause of action under the act. The allegations are to the effect that the acts of defendants are injurious to plaintiffs, and constitute a private nuisance as to them. With such an action the statute has nothing to do. It was not designed to supersede the remedy which was formerly available to persons injured by pollution of streams. Its object was the protection of the general public, by prohibiting the discharge of sewage into a stream except as permitted by the state board of health. An unrevoked permit is expressly made a complete defense to a suit brought under the act. But such a permit would not be a defense or even an issue in a suit to enjoin such a discharge as a private nuisance. In *People* v. *City of Reedley*, 66 Cal. App. 409, 413 [226 Pac. 408], the court said: "It has been held a number of times in this court that a license, permit, or franchise does not authorize the creation or maintenance of a nuisance. (*Voorheis* v. *Tidewater Southern Ry. Co.*, 41 Cal. App. 315 [182 Pac. 797]; *Coats* v. *Atchison*, 1 Cal. App. 441 [82 Pac. 640]; *Sullivan* v. *Royer*, 72 Cal. 248 [1 Am. St. Rep. 51, 13 Pac. 655].) Other states support the same rule. See extended note to *Missouri, Kansas & Texas Ry. Co.* v. *Mott*, 98 Tex. 91, 70 L. R. A. 579, 81 S. W. 285." To the same effect, see *Strong* v. *Sullivan*, 180 Cal. 331 [4 A. L. R. 343, 181 Pac. 59]; *Williams* v. *Blue Bird Laundry Co.*, 85 Cal. App. 388 [259 Pac. 484].

We are therefore forced to conclude that the Public Health Act has no bearing on this case, and that the plaintiffs are entitled only to such relief as a court of equity may ordinarily grant. Consequently, if an injunction is given, it must be directed against only those acts which cause some material injury to plaintiffs.

An examination of the judgment discloses the fact that the provision against discharge of liquids is an absolute prohibition, while the restraint imposed upon the maintenance of cesspools is qualified. Considering the evidence

in connection with the authorities already cited, we think that there is no reasonable basis for this distinction. ■ Where the decree absolutely prohibits any acts, there should be abundant evidence that the continuance of the acts will inevitably result in irreparable injury. In the absence of such strong evidence, the decree should merely enjoin the doing of the particular acts in a manner calculated to injure the plaintiff. (*McMenomy* v. *Baud*, 87 Cal. 134 [26 Pac. 795]; *Winchell* v. *City of Waukesha*, 110 Wis. 101 [84 Am. St. Rep. 902, 85 N. W. 668]; 5 Pomeroy's Equity Jurisprudence, 2d ed., sec. 1948.)

The judgment is therefore modified by striking out the words: "in such a manner that the same may by the force of gravity or by the winter rains be washed into said branch of Nicasio creek where the same flows through the lands of plaintiffs"; and substituting therefor the following: "in such a manner as to cause a material pollution of the waters or contamination of the bed or banks of the said branch of Nicasio creek, or to give rise to noxious odors preventing the use and enjoyment of said lands of plaintiffs in the usual or customary manner."

As so modified, the judgment is affirmed.