[Civ. No. 4438. Third Appellate District.—March 4, 1932.]

HOWARD A. COOK, Respondent, v. EARL K. HATCHER, Appellant.

Huston, Huston & Huston for Appellant.

Gaddis & McDonald for Respondent.

PLUMMER, J.—The plaintiff had judgment in an action to abate a nuisance, from which judgment the defendant appeals.

The nuisance complained of consisted in the operation of a dairy, breeding and propagating dairy cattle and maintaining hogs in a pen on appellant's property in front of and just across the public highway from the respondent's dwelling-house.

The record shows that the appellant and respondent each owned 80 acres of land situate in the county of Yolo about two miles north of the village of Yolo, which lands are separated by a county highway 60 feet in width. The highway runs in an easterly and westerly direction. The respondent's property lies north of the highway and the appellant's property lies immediately to the south thereof. The respondent's dwelling-house is situate on his premises 35 feet north of the north boundary of the highway, and faces in a southerly direction. This dwelling-house has been occupied by the respondent for over twenty-nine years. The wife and stepdaughter of respondent have lived with respondent on said premises for about three years prior to the beginning of this action. The prevailing winds in the section of the country where the premises owned by the appellant and respondent are situate are from a southerly direction, so that odors emanating on either of the premises are carried to the northward.

The record shows that the defendant was using his property as a dairy ranch and for raising hogs and breeding cattle. In so doing he used barns, corrals and pens situated across the highway to the south of the respondent's property. The cow corral maintained by the defendant adjacent to the southerly boundary line of the highway is about 95 feet distant from the respondent's dwelling-house.

The cow barn on defendant's property is situate about 32 feet south of the fence adjacent to the highway. The distance from the defendant's cow barn to the respondent's dwelling-house is 85 feet; the calf corral is distant to the southeasterly from the respondent's dwelling-house about 85 feet; the calf shed is about 130 feet distant; the bog-pen is adjacent to the highway a distance from the dwelling-house of the respondent of about 160 feet. It would serve no useful purpose to recite all of the offensive matters detailed in the record or to review the testimony of the various witnesses in relation thereto. ■ It is sufficient to say that the testimony abundantly establishes and supports the finding of the trial court that the appellant in this action, for a considerable period of time, so conducted the dairy ranch, hog-pens, etc., as to constitute the same a nuisance. We have only to recite the facts that the defendant piled offensive manure piles in such quantities close to the southerly boundary line of the highway to which we have referred, that the offensive substances composing such piles, which may be left unsaid—(all testified to literally as shown by the record)—so befouled the atmosphere as to interfere with the use, comfort and enjoyment of the respondent's property. Among other things, the defendant maintained a corral for his cattle where they would be driven into the barn at 2 o'clock in the morning for milking, turned out early in the morning, after which the barns would be cleaned and the offensive matter piled in such a way that the odors therefrom would be carried across to the respondent's dwelling-house. The herd of cattle consisted of some 46 head, in addition to which a number of calves were kept in an adjoining corral. The testimony shows that the odors were nauseating and sickening, and that these odors would permeate the dwelling-house of the respondent and seriously interfere with the respondent's family when they were eating their meals. To quote from the record: ''The odors which were blown from appellant's barn, calf-corrals, calf-sheds, hog-pens, cow-corral and manure piles in appellant's yard and dwelling house were sickening and disgusting, and seriously interfered with living conditions on respondent's premises.''

Again, the record shows that the appellant engaged in the practice of breeding cows in the cow corral immediately

across the highway and in front of the respondent's front yard. This would occur when the respondent had company, as well as when the respondent was there alone.

The record also shows that the appellant kept his herd of cows in a corral in front of the respondent's premises, where they were accustomed to give birth to calves. The hogs and the cows were fed on milk and other substances which soured and added to the ordinary odors emanating from the pig-pen.

The testimony shows that the appellant's dwelling-house was distant 600 feet from the nearest barn or corral which we have mentioned and in such direction that the odors from the premises which we have been describing were not carried thereto.

The court in its findings and in its decree did not order the abatement or removal of the cow barn, sheds, corrals, etc., maintained by the appellant, but did decree that they be so used as not to create a nuisance or to cause offensive odors emanating therefrom so that they would be carried to the respondent's premises, and also not to conduct breeding practices on his premises in such a way as to become unsightly and offensive.

The record further shows that the appellant is the owner of 80 acres of land, from which it necessarily follows that the barns, corrals, sheds, pig-pens, etc., maintained by the defendant, could readily be so situated that the conduct thereof would not constitute a nuisance.

Upon this appeal it is contended that the testimony is insufficient to support the findings of the court that the acts of the defendant, and the manner in which he conducts his business, constitute a nuisance. As hereinbefore stated, the sickening details set forth in the record are such that we do not care to spread them further upon the record in this case, and will content ourselves with the simple statement that the evidence shows beyond controversy that the manner in which the appellant has conducted his dairy, hog-raising and cattle-raising practices were such as to not only support the findings of the trial court, but to preclude any other findings. The contention of the appellant in this particular appears to be based upon the theory that conducting a dairy, feeding hogs and breeding cattle is a lawful and ordinary business attendant upon farming operations, all of

which may be conceded, but it does not follow that because one is engaged in a lawful occupation, that he is entitled to conduct that business in such a manner as to constitute it a nuisance.

A large number of cases have been cited by counsel, both for the appellant and for the respondent, a few of which only will it be necessary to consider. As these cases bear upon the injunction order issued by the court in this cause, which, by the appellant is claimed to be too broad, we will consider not only the fact of the acts of the appellant constituting a nuisance, but also the scope of the injunction order.

The leading case upon the subject of nuisances in our state is that of *McIntosh* v. *Brimmer,* 68 Cal. App. 770 [230 Pac. 203, 204], where the distinction is drawn between a reasonable and unreasonable use of one's premises. In the Brimmer case the defendant was keeping a number of chickens in such a place and in such a manner that the dust created by the scratching of the chickens would be blown over and upon vines and trees of the plaintiff's premises near by. In the Brimmer case it appears that the defendant had located his chicken yards close to the premises occupied and belonging to the plaintiff. It was there held that the nuisance did not arise by reason of the business being such *per se,* because the business of raising chickens was perfectly lawful, but it arose from the manner in which the defendant maintained his chicken yards. The opinion in the Brimmer case first lays down the proposition that one must so use his own property as not to destroy the property of another.

In considering the question of reasonable use it appears that under some circumstances the use of one's property would be perfectly reasonable, and under other circumstances wholly unreasonable. Thus, if the barns, sheds, cow corrals, pig-pens and manure piles, and all the practices of the defendant in connection therewith, were so distant from the plaintiff's dwelling-house that the obnoxious and unsightly practices would not be visible and the offensive odors arising from the barns, corrals and pig-pens would not be carried to the plaintiff's premises, then there would be nothing unreasonable in the use thereof by the defendant. The location must be considered, and if one locates his own busi-

ness, which otherwise is lawful, in such a place, and conducts it in such a manner that foul odors emanating therefrom permeate the dwelling-house of another, and seriously interfere with the comfort, use and enjoyment thereof, and conducts unsightly practices immediately in front of one's dwelling-house, then and in that case the use is wholly unreasonable, and will be so declared by the courts.

In the opinion in the Brimmer case occurs a paragraph to which appellant calls our attention, seeking to apply it to the case at bar. The paragraph is as follows: "It is important to consider whether the acts complained of in any particular case cause an injury to property or only to the personal comfort of the complaining party. For there is a marked distinction between an action for nuisance in respect to an act producing a material injury to property, as where trees or fruit are injured by dust or noxious gases, and an action brought in respect to an act producing personal discomfort only, such, for example, as noises, disagreeable smells, *et cetera*. As to the latter the person complaining of the annoyance must submit, in the interest of the public generally, to the discomfort usually incident to the circumstances of the place and the trades carried on around him. But the same rule does not apply where the injury is to property."

As applied to the case at bar this paragraph does not correctly state the law, as the cases cited in the opinion following this paragraph abundantly demonstrate. Thus, in the case of *Pennoyer* v. *Allen*, 56 Wis. 502 [43 Am. Rep. 728, 14 N. W. 609], cited in the opinion, it was held that "any business which necessarily and customarily impregnates large volumes of the atmosphere with disagreeable, unwholesome or offensive matter may become a nuisance to those occupying property in the vicinity, in case it is too near and the atmosphere is so contaminated as to substantially impair the comfort or enjoyment of the neighbors". We quote further from the case of Pennoyer, relied upon by the court in the Brimmer case, to wit: "The ownership of land carries with it the rightful use of the atmosphere while passing over it. Title to land gives the owner the right to impregnate the air upon and over the same with such smoke, vapor and smells as he desires, provided he does not contaminate the atmosphere to such an extent as to sub-

stantially interfere with the comfort or enjoyment of others, or injure the use of their property. But air is movable, and constantly flowing from the premises of one to those of another, and hence, when it becomes thickly impregnated with putrid substances, it necessarily flows on to the adjacent premises in one direction or another. This being so, it follows that any business which necessarily and constantly impregnates large volumes of the atmosphere with disagreeable, unwholesome or offensive matter, may become a nuisance to those occupying adjacent property, in case it is so near, and the atmosphere is contaminated to such an extent as to substantially impair the comfort or enjoyment of such adjacent occupants. When such comfort and enjoyment are so impaired, and compensation is demanded, it is no defense to show that such business was conducted in a reasonable and proper manner, and with more than ordinary cleanliness, and that the odors so sent over and upon such adjacent premises were only such as were incidental to the business when properly conducted. It is the interruption of such enjoyment and the destruction of such comfort that furnishes the ground of action, and it is no satisfaction to the injured party to be informed that it might have been done with more aggravation. . . . A business necessarily contaminating the atmosphere to the extent indicated, should be located where it will not necessarily deprive others of the enjoyment of their property, or lessen their comfort while enjoying the same.''

The opinion in the Brimmer case also cites other authorities to this effect: ''A person may not use his own property, even in and about a business in itself lawful, if it be used in such a manner as to seriously interfere with another in the enjoyment of his right in the use of his property. . . . A reasonable use can never be construed to include those uses which produce destructive vapors and noxious smells and that result in material injury to the property and to the comfort of the existence of those who dwell in the neighborhood.''

In the Brimmer case it was contended there, as contended here, that the injunction was too broad, and that it was indefinite, as it did not sufficiently advise the appellant what he was restrained from doing. The court said: ''We see no force in this objection. The decree seems to be as clear

and certain as the circumstances will permit." (Citing a number of cases.) And then continues: "Where the injury complained of results from a business which is not *per se* a nuisance, it being caused only by reason of the manner in which the business is conducted or by the surrounding circumstances, it is always proper for the court so to frame its decree that defendant's business will not be absolutely prohibited, if this can be done and still give to plaintiff the relief to which he is entitled." The decree in that case "enjoins appellants from so maintaining their chickens and the premises on which they are kept as to produce dust in such quantities that any of it will be carried by the winds across the highway to respondent's land". Stating that this decree is as specific as was the decree in the case of *Collins* v. *Wayne Iron Works*, 227 Pa. 326 [19 Ann. Cas. 991, 76 Atl. 24].

In the case of *Judson* v. *Los Angeles Suburban Gas Co.*, 157 Cal. 168 [21 Ann. Cas. 1247, 26 L. R. A. (N. S.) 183, 106 Pac. 581], a nuisance case, it was held that the plaintiff was entitled to recovery for personal discomfort or annoyance to which he was subjected, without proving any damages to his property. In that case it was held that the factory was not a nuisance *per se*, but only a nuisance by reason of its operation. The court said, among other things: "In order that a judgment of this character may be upheld, it is not necessary that the health of plaintiffs or members of his household should be impaired. It is sufficient if the odors, sounds and smoke were offensive to the senses." (Citing a number of cases.)

In the case of *Royalty et al.* v. *Strange*, (Tex. Civ. App.) 204 S. W. 870, a case relied upon by the appellant, we find the following, quoting from the syllabus: "If the land owner keeps such a number of hogs, in such small pens or in such a way, or feeds them with garbage in such a way as to produce disagreeable and noxious odors interfering with the comfort, use and enjoyment of another owner, such owner is entitled to an injunction for abating the nuisance." The injunction in that case was held too indefinite and too broad, in that it might prevent the defendant from maintaining his hog-pens on any part of his 50-acre tract. That opinion further approves the following language: "A lawful business may be conducted in such manner as to be-

come a nuisance, and in such case the party so conducting it might, at the suit of one injured thereby, be restrained from continuing to conduct it in such manner, but he could not be denied the right to carry on the business in a proper manner.''

There is nothing in the case at bar which prevents the defendant from conducting his dairy, hog-raising and cattle-breeding operations in a proper manner, and we may also add, in a proper place. There appears to be sufficient room upon the appellant's premises where every act complained of in this action might be so conducted as not to be offensive to the plaintiff or any other person.

Again, in the case of *Singer* v. *James*, 130 Md. 642 [100 Atl. 642], another case relied upon by the appellant in support of his contention that the injunction in this action is too broad, we find the following: ''Where defendant maintained hog, cow, and horse pens, dog kennels, and chicken coops in close proximity to plaintiff's residence, with consequent loud noises, noisome odors, and other obnoxious effects, plaintiff was entitled to injunctive relief against the nuisance.'' (We have quoted from the syllabus.) It appears that in that case the injunctive order contained the following words: ''any foul odors'', and the court held that language in the injunction too broad, and modified the decree to the extent that in form and substance would read practically as it does in the case at bar.

In the case of *Williams* v. *Bluebird Laundry Co.*, 85 Cal. App. 388 [259 Pac. 484, 486], where it was held that an injunction order restraining the defendant from so conducting its laundry as to produce loud noises, noxious odors, etc., was not too broad. We quote from the opinion in that case the following: ''It is strenuously contended that because the judgment merely restrains the defendant from so conducting its plants as to cause loud noises, offensive odors, black smoke and soot, it is so indefinite as to render it ineffective, and that it must be reversed; that it is impossible to determine what degree of noise, or degree of odor, etc., would constitute a violation of the injunction, and that the defendant may be subjected to citations for contempt at any time that any one of the plaintiffs may deem any noise, odor, or smoke objectionable to himself.

However, the judgment plainly states that the laundry or laundries shall be so operated as to avoid causing loud noises, offensive odors, black smoke, or soot, or in any other manner as to be deleterious to the health of the plaintiffs. We think the entire judgment when read together is sufficiently definite in this regard.''

In *Thompson* v. *Kraft Cheese Co.*, 210 Cal. 171 [291 Pac. 204, 208], an action involving the pollution of water and the scope of the injunction, we find that the injunctive order was framed so as to prohibit the defendant from conducting his business ''in such a manner as to cause the material pollution of the waters, or contamination of the bed or banks of said branch of Nicasio creek, and to give rise to noxious odors, preventing the use or enjoyment of said lands of plaintiff in the usual and customary manner''.

The defendant in the case at bar is restrained and enjoined from conducting, operating or maintaining the business of dairying in such a manner, and at such location upon the defendant's said lands, as to produce loud and distracting noises so that said loud and distracting noises created and emitted from the said dairy business will be carried, transmitted to, penetrate or enter into the said dwelling-house of the plaintiff situate upon his said lands. And restraining the defendant from maintaining his dairy, hog-pens, barns, etc., in such a manner as to produce offensive and disagreeable odors so that said offensive and disagreeable odors will be carried by the winds across that certain county road to the lands and premises belonging to the plaintiff. The same is true with reference to conducting the offensive breeding practices to which we have referred. No lawful act on the part of the appellant is restrained; he is simply restrained from so conducting his business as to cause the same to become and constitute a nuisance.

As we have heretofore stated, the record shows that the appellant owns 80 acres of land; that he has so located his own dwelling-house that the practices and acts to which we have referred do not constitute a nuisance with reference thereto. He has only to so locate or conduct his dairy business, hog raising, etc., so as not to cause the same to become a nuisance to the respondent.

The authorities which we have cited show that such an injunction order is properly maintainable.

The judgment is affirmed.

Thompson (R. L.), J., and Preston, P. J., concurred.