[Civ. No. 11. Fifth Dist. Feb. 6, 1962.]

WILLIAM R. WADE et al., Plaintiffs and Respondents, v. ROBERT CAMPBELL et al., Defendants and Appellants.

Bradley & Bradley and Nathaniel O. Bradley for Defendants and Appellants.

Locke & Price, John Locke and Edgar D. Price for Plaintiffs and Respondents.

BROWN, J.—This action was commenced by various plaintiffs on November 6, 1958, and recovery of damages was sought from January 1, 1956, up to the time of filing suit. The first amended complaint, upon which the request for damages and for a permanent injunction was based, sets forth

eight causes of action against the defendants, Robert Campbell and Doris Campbell, husband and wife. Seven of these causes of action set forth that a dairy is being operated by defendants under certain described conditions that make it a public nuisance which should be enjoined, and specify damages in varying amounts allegedly sustained by the plaintiffs from its maintenance. The eighth cause of action, brought by all the plaintiffs, alleges that the dairy is being operated in violation of a certain deed of restrictions limiting to residential purposes certain lots owned by defendants and comprising a portion of the premises devoted to the dairy. Defendants' answer denied the material allegations of the complaint and set up affirmative defenses of laches and the bar of the statute of limitations. Upon a nonjury trial and after a view of the premises, the court issued its order absolutely enjoining defendants from using their property as a dairy or maintaining livestock thereon, except for their personal use; awarded damages for past injuries to the Wades and Rectors, $600 per couple; to Elsie B. Ramos, $600; to the Welters, $500; to the Pinheiros, $300; to the Kellmanns, $850; and declared the declaration of restrictions to be null and void and of no effect. Neither damages for property depreciation nor exemplary damages were allowed. Defendants appeal from the judgment.

Since November 7, 1946, defendants have operated a Grade A producer-distributor type dairy on premises in a rural and residential area known as tract 71, 2 miles south of Visalia, Tulare County, fronting on Mooney Boulevard. All plaintiffs to this action are property owners within this tract which was subdivided in 1946 into 51 lots, and were, during the period involved, residents thereon. Plaintiffs owned various lots which were about 98 feet wide and varied in depth from 199 feet to 282 feet, some lots abutting on defendants' property. In 1946 defendants purchased Lot 47 (which is 98 feet by 370 feet) and Lot 44 (which is 98 feet by 510 feet on one side and 365 feet on the other), and therafter, acquired additional lots as follows: Lot 48 (98 feet by 370 feet); Lot 49 (98 feet by 370 feet); Lot 43 (98 feet by 365 feet on one side and 282 feet on the other); and the east 110 feet of the east 220 feet (a 110-foot by 196-foot section) of Lots 45 and 46. After the litigation commenced, defendants purchased from one of the original plaintiffs who has since dismissed his suit, the following lots: Lot 50 (98 feet by 370 feet), and Lot 51 (147 feet fronting on Mooney Boulevard and tapering to 14 feet

wide on the east rear, by 370 feet in depth). Defendants had acquired a total of seven and one-half lots, consisting of approximately 7 acres, within this tract, gradually expanding the dairy operations, increasing the herd to a peak of approximately 220 cows, 60 heifers, 60 calves and 7 bulls; added a drive-in milk depot, a lunch counter on Mooney Boulevard, processing and bottling equipment, buildings and milk routes. The defendants also maintained on the premises pigs for their own use ranging in number from 1 to 6 at different times, horses ranging in number from 1 to 14, donkeys at some times, and 1 to 3 burros at different times.

Thousands of gallons of water per day are used in the dairy operation for the purpose of washing the cows, the barns and other areas where cattle are kept, and washing away straw, sand and some manure. The waste water and effluent drain from the dairy into Packwood Creek, which forms the boundary line of the tract to the south.

The complaints common to, and supported by evidence received in behalf of, all plaintiffs may be summarized as follows: (a) Noxious odors pervaded their properties from manure that was permitted to accumulate and was maintained in large piles, from a silage pit, from the operation of a feed mill, and from a dark, slimy scum which formed on stagnant waste water during periods Packwood Creek was dry; (b) an unusually large fly population with resulting fly specks deposited on and within homes and on laundry hung to dry; (c) an unusually large mosquito population which interfered with the use of outdoor recreational facilities and which invaded homes; and (d) excessive dust from the use of a feed mill and from the cattle corrals.

Individual plaintiffs testified that large piles of manure maintained on the premises, the open breeding of cattle, and the sight of afterbirth dragged to an open place by dogs offended their eyes; that animal noises in the night disturbed their ears; that stenches from the barnyard and from manure borne by surface waters onto their properties assaulted their nostrils; and that excessive fly specks which "blackened" paint, made frequent repainting of homes and garages necessary.

In December 1955 a severe flood caused substantial damage in the tract and manure was floated to and deposited upon the property and within the homes of some plaintiffs. All plaintiffs testified that throughout the remainder of that winter

and the spring of 1956 the dairy odors were strong, offensive and nauseating, and the fly and mosquito populations substantially increased.

Defendants urge that the judgment of the court below was erroneous and ask three questions on appeal: (1) Was a nuisance created and maintained by defendants on their premises and if so, was this a public and continuing nuisance? (2) Did the plaintiffs show that they suffered some special damage which is distinct and different from the damage to the public at large and which entitled them to damages for the maintenance of a public nuisance? (3) Should the court have considered the fact that many of the acts complained of had been abated by the defendants prior to the time of trial?

While the notice of appeal indicates that defendants appeal from the entire judgment, that portion declaring the declaration of restrictions null and void is not presented on their appeal and we may therefore disregard it.

Defendants first ask, "Was a nuisance created and maintained by defendants on their premises and if so, was this a public and continuing nuisance"? The answer is in the affirmative. Section 3479 of the Civil Code provides, in part: "Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, . . . is a nuisance." Conditions which have been treated by California courts as nuisances include dust arising from the conduct of a chicken raising business (*McIntosh* v. *Brimmer,* 68 Cal.App. 770 [230 P. 203]); odors, sounds and smoke which are offensive to the senses (*Judson* v. *Los Angeles Suburban Gas Co.,* 157 Cal. 168 [106 P. 581, 21 Ann.Cas. 1247, 26 L.R.A. N.S. 183]); and the operation of a dairy, the breeding and propagating of dairy cattle and the maintaining of hogs in a pen on defendant's property in front of and just across a public highway from plaintiff's home (*Cook* v. *Hatcher,* 121 Cal.App. 398 [9 P.2d 231]). The evidence in the case under consideration disclosed dust arising from the conduct of defendants' dairy, odors and sounds which are offensive to the senses, the breeding and propagating of dairy cattle and the maintenance of hogs in a pen on defendants' property in front of and across a public highway from the Wade property. This evidence amply supports a finding that defendants maintained a nuisance.

Section 3480 of the Civil Code provides: "A public nuisance is one which affects at the same time an entire community or

neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal.'' ▉ Conditions which amount in law to public nuisances include a cattle stable and hog pen, together with a large manure pile, on the banks of, and which polluted the waters of, a nonnavigable stream (*People* v. *Elk River Mill & Lumber Co.*, 107 Cal. 214 [40 P. 486, 48 Am.St. Rep. 121]); noxious gases emitted from an accumulation of whey, sour milk and debris, allowed to stand in tanks at defendant's creamery (*Fisher* v. *Zumwalt*, 128 Cal. 493 [61 P. 82]); and dust, noise and grit from a cement plant (*Markey* v. *Danville Warehouse & Lumber, Inc.*, 119 Cal. App.2d 1 [259 P.2d 19]). ▉ In our case, 11 plaintiffs owned 12½ lots in a 51-lot tract, and thus constituted a considerable number of persons in the neighborhood. Thus, the nuisance created by the manner in which defendants operated their dairy was a public nuisance.

▉ A continuing nuisance is one which may be abated at any time (*Kafka* v. *Bozio*, 191 Cal. 746 [218 P. 753, 29 A.L.R. 833]). Since the manner in which defendants' dairy was operated was capable of being abated at any time, the nuisance was properly classed as a continuing one.

▉ Defendants next contend that plaintiffs have no standing to maintain an action in that they did not show special injury apart from that suffered in common with the public. It is provided by section 3493 of the Civil Code: ''A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise.''

The case of *Fisher* v. *Zumwalt, supra,* 128 Cal. 493, involved operations factually similar to those before us. In that case a creamery was operated in such a manner that vile and offensive odors and stenches polluted the air in and about the homes of a considerable number of persons, rendering them uninhabitable. Plaintiff, one of the persons whose property was affected, sued alone. In a well-reasoned opinion, the court held that, although the nuisance was of a public nature, that fact did not deprive plaintiff of the right to an action for its abatement, since it interfered with or obstructed the use and enjoyment of his private property. The facts in the case before us are stronger, in that in addition to pollution of the air by nauseating odors and stenches, the conditions maintained on defendants' property gave rise to excessive mosquito and

fly populations, unpleasant and offensive sights and sounds, and the pollution of Packwood Creek.

We recognize an apparent conflict of decisions upon the question, but believe that the rule stated in *Fisher*, as approved and applied in *Johnson* v. *V. D. Reduction Co.*, 175 Cal. 63 [164 P. 1119, L.R.A. 1917E 1007], and in *Meek* v. *DeLatour*, 2 Cal.App. 261 [83 P. 300], is correct and should be applied in this case. While the conditions created and maintained by defendants on their property are sufficient to constitute a continuing and public nuisance affecting a considerable number of persons in the community, the plaintiffs, as near residents and property owners, were specially injured thereby. (*Cook* v. *Hatcher, supra,* 121 Cal.App. 398; *Gould & Kane, Inc.* v. *Valterza,* 37 Cal.App.2d 678 [100 P.2d 335].)

Defendants next contend that if a nuisance existed, it was private in nature and the special defenses of laches and the statute of limitations raised by their answer should be applicable to bar recovery or injunctive relief. They further state that it is not settled whether the principle that no lapse of time can legalize a public nuisance applies in the action of a private person who suffers special injury from a public nuisance. In support of the latter proposition, they cite *Lane* v. *San Diego Elec. Ry. Co.*, 208 Cal. 29 [280 P. 109]. In that case a railway loop was constructed by defendant in the public street in front of plaintiffs' property, interfering with plaintiffs' right of access. At page 35, the court said: "The fact that the continued use of the southerly end of the loop will eventually ripen into a prescriptive right is a sufficient ground, regardless of any question of present damage, to entitle the plaintiffs to an injunction." They also cite *McLean* v. *Llewellyn Iron Works,* 2 Cal.App. 346 [83 P. 1082, 1085], where the court, at page 350, stated: "A public nuisance cannot be legalized by prescription (Civ. Code, § 3490) ; nor, so long as the streets remain such, can the rights of abutting land owners be thus affected." In denying the petition for rehearing, the Supreme Court said, "It is, however, proper to say that we are not to be understood as affirming that portion of the opinion of the district court of appeal to the effect that the right of action by a private party to abate a public nuisance, because of special injury arising therefrom to him, may not be barred by the statute of limitations."

Other cases, however, have held that "Neither prescriptive rights, laches nor the statute of limitations is a defense against the maintenance of a public nuisance" (*City of Turlock* v.

*Bristow,* 103 Cal.App. 750, 756 [284 P. 962]) ; and "No lapse of time can legalize a public nuisance, and a prescriptive right cannot be maintained against a public nuisance. . . ." (*Strong* v. *Sullivan,* 180 Cal. 331, 334 [181 P. 59, 4 A.L.R. 343]) ; and, the maintenance of a public nuisance may not be defended on the ground of laches or the statute of limitations (Civ. Code, § 3490; *Cloverdale* v. *Smith,* 128 Cal. 230 [60 P. 851] ; *Bowen* v. *Wendt,* 103 Cal. 236 [37 P. 149]). ▮▮▮ We are of the opinion that the better rule is that the defense of laches and the bar of the statute of limitations are inapplicable.

It was apparently the theory of the trial court that the conditions created and maintained by defendants constituted a continuing nuisance which existed at the time of commencement of the action. The nuisance arose from acts on and uses of defendants' premises, continuing, and not permanent, in nature. ▮▮▮ Every repetition of a continuing nuisance is a separate wrong for which the person injured may bring successive actions for damages and injunctive relief until the nuisance is abated, even though an action based on the original wrong may be barred by the statute of limitations (*Kafka* v. *Bozio, supra,* 191 Cal. 746; *Guttinger* v. *Calaveras Cement Co.,* 160 Cal.App.2d 460 [325 P.2d 145]). The court did not err in disregarding the affirmative defenses raised by defendants' answer.

▮▮▮ Defendants next argue that property owners, other than defendants, kept approximately 150 animals, including horses, cows, calves, hogs and goats, and fowl, including ducks, geese and chickens, on the tract. It is apparently their theory that many of the conditions complained of could have emanated from this source. As was stated in *Judson* v. *Los Angeles Suburban Gas Co., supra,* 157 Cal. 168, 171, "The fact that other sources of possible discomfort to plaintiff existed in the neighborhood of his property is no defense to an action of this kind."

Defendants lastly contend that an injunction cannot be issued where all that is complained of as a nuisance belongs to the past, as where the nuisance has been abated before commencement of the suit, or is voluntarily abated by the defendants before judgment. Since they correctly state the principle that the abatement of a nuisance does not prevent the plaintiff from recovering damages for its past existence, it seems clear that their contention runs to the scope of the decree of injunction.

In a long line of cases, commencing with *McIntosh* v. *Brimmer, supra,* 68 Cal.App. 770, decided in 1924, it has been held that where the defendant's business is not a nuisance per se, the scope of the injunction should be limited so as to not absolutely enjoin the defendant's entire business, if a less measure of restraint will afford the relief to which the plaintiff is entitled. In the case of *Anderson* v. *Souza,* 38 Cal.2d 825, 840-841 [243 P.2d 497], the court said: "Injunctive process ought never to go beyond the necessities of the case and where a legitimate business is being conducted and in the conduct thereof a nuisance has been created and is being maintained, the relief granted should be directed and confined to the elimination of the nuisance, unless under the peculiar circumstances of the case the business, lawful in itself, cannot be conducted without creating a nuisance and violating the rights of contiguous property owners." (See also *Vowinckel* v. *N. Clark & Sons,* 216 Cal. 156, 162 [13 P.2d 733]; *Thompson* v. *Kraft Cheese Co.,* 210 Cal. 171 [291 P. 204]; *People* v. *Selby Smelting & Lead Co.,* 163 Cal. 84 [124 P. 692, 1135, Ann. Cas. 1913E 1267]; *Byers* v. *Colonial Irr. Co.,* 134 Cal. 553, 555 [66 P. 732]; and *City of Fresno* v. *Fresno Canal & Irr. Co.,* 98 Cal. 179, 184 [32 P. 943].)

In the present case, defendants urge that many of the conditions which gave rise to plaintiffs' complaints were voluntarily abated by defendants prior to trial. Operation of the feed mill and maintenance of the silage pit had been discontinued. Some dust was eliminated when defendants discontinued their milk routes and installed large areas of concrete slab. The uncontradicted testimony of Dr. Donald Murray, manager of the Delta Mosquito Abatement District, showed that mosquito control was 100 per cent effective in 1959, and no further problem was anticipated. It is urged that the remaining complaints of plaintiffs are the annoyance from flies, the odors from manure and the noise from animals at night. We must add to that list the drainage of waste water from the dairy, polluting Packwood Creek when water is flowing therein, and gathering in stagnant, scummy, malodorous pools when it is not. Further, we are cognizant of the fact that the trial court viewed the premises and noted the conditions as they existed thereon at the time of trial. We did not. A trial judge's view of property with the consent of counsel is evidence in the case and may be used alone or with other evidence to support the findings (*Stegner* v. *Bahr & Ledoyen, Inc.,* 126 Cal.App.2d 220 [272 P.2d 106];

Witkin, California Evidence, Demonstrative, Experimental and Scientific Evidence, § 320, p. 359). Whether a nuisance has been abated is a question of fact. Defendants are bound by the classical rule that the findings of the trial court upon questions of fact are conclusive and will not be disturbed where there is any substantial evidence to support them. Implicit in the findings of the trial court that the nuisance is continuous and constantly recurring is the further finding that the nuisance had not been abated by defendants but existed at the date of judgment. Such implied finding is amply supported by the record.

The judgment is affirmed.

Conley, P. J., concurred.

Stone, J., deeming himself disqualified, did not participate.